IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELLEY MARKLE )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>DRUMMOND ADVISORS, LLC and )<br>BJB PROPERTIES, INC. )<br>)<br>    Defendants ) | Case No. 19-C-____<br><br><br><br><br><br><br><br>**JURY DEMAND** |

# COMPLAINT

Plaintiff, as a Complaint against the Defendants, alleges the following:

## NATURE OF THE CASE

1. This is an action for wage theft. Plaintiff, Shelley Markle, worked in a non-exempt position on construction sites operated by Defendants, Drummond Advisors, LLC and BJB Properties, Inc., routinely worked in excess of 40 hours in a workweek throughout her employment, and was denied overtime wages for her overtime hours.

2. Defendants' conduct violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and Illinois Minimum Wage Law, 820 ILCS 105/1-105/15 ("IMWL").

3. As a remedy, Plaintiff seeks the recovery of her unpaid overtime wages, liquidated and statutory damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (interstate commerce), and 29 U.S.C. § 216(b) (Fair Labor Standards Act).

5. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because they are so closely related to the federal claims that they form part of the same Article III case.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a Defendant resides in this District and a substantial part of the events and omissions at issue took place in this District.

## PARTIES

7. Plaintiff Shelley Markle is an individual and a resident of Chicago, Cook County, Illinois. Plaintiff was employed directly by Defendant Drummond Advisors, LLC during the period April 2017 to December 2018.

8. Defendant Drummond Advisors, LLC. ("Drummond") is an Illinois limited liability company with its principal place of business in Park Ridge, Cook County, Illinois. On information and belief, Drummond is a wholly owned subsidiary of Defendant BJB Properties, Inc.

9. Defendant BJB Properties, Inc. ("BJB") is an Illinois corporation with its principal place of business in Park Ridge, Cook County, Illinois.

10. At all times relevant, Drummond was an "enterprise" as defined in Section 3(r)(l) of the FLSA, 29 U.S.C. § 203(r)(l), and an enterprise engaged in

commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, 29 U.S.C.§ 203(s)(1)(A).

11. At all times relevant, Drummond was Plaintiff's "employer" as defined in the FLSA, 29 U.S.C. § 203(d) ("FLSA"), and the IMWL, 820 ILCS 105/3(c).

12. At all times relevant, Defendant BJB was an "enterprise" as defined in Section 3(r)(l) of the FLSA, 29 U.S.C. § 203(r)(l), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, 29 U.S.C.§ 203(s)(1)(A).

13. At all times relevant, BJB was Plaintiff's "employer" as defined in the FLSA, 29 U.S.C. § 203(d) ("FLSA"), and the IMWL, 820 ILCS 105/3(c).

14. At all times relevant, Defendants BJB and Drummond acted directly or indirectly in their respective interests in relation to Plaintiff.

15. At all times relevant, Defendants BJB and Drummond jointly employed Plaintiff for purposes of the FLSA and IMWL, and they are jointly and severally liable for the violations of the FLSA and IMWL alleged herein.

## FACTUAL ALLEGATIONS

16. In or around March 2017, Plaintiff applied for a position as a construction project manager, to work on projects operated by Defendants BJB and Drummond, its wholly owned subsidiary.

17. When she applied for the position, Plaintiff had more than two decades of relevant experience in construction project management.

18. Plaintiff was interviewed by Debra Tanzer, BJB's human resources director; Sean Barry, a BJB partner who became Plaintiff's second-level supervisor; Joe Marrese, an employee of Timberwolf General Contracting ("Timberwolf"), a related entity, who became her direct supervisor; and Matt Pater, a Drummond project manager.

19. On information and belief, Mr. Barry, the BJB partner; Ms. Tanzer, BJB's human resources director; and Mr. Marrese, a Timberwolf employee, participated in the decision to extend an employment offer to Plaintiff.

20. On information and belief, Mr. Barry had final authority on Plaintiff's hiring. No employment offer could be made to Plaintiff without his consent.

21. Plaintiff is the first and only woman Drummond has ever employed as a construction project manager.

22. After being informed of the decision to offer her employment, Plaintiff negotiated the terms of her employment with Ms. Tanzer, BJB's human resources director. During the negotiations, Plaintiff raised the issue of severance in the event of a termination without cause. Ms. Tanzer told her, "We've never fired anyone without cause" and "That will never happen."

23. In April 2017, Plaintiff received a written employment offer providing for gross wages of $3,461.55 bi-weekly for 45 hours of work per week, with a core work schedule of Monday-Friday 7:30 a.m. to 4:00 p.m. including a 1/2-hour unpaid lunch.

4

24. The written employment offer includes a detailed description of "Project Manager Expectations," including the position's objective, overall duties, construction jobsite duties, construction documentation duties, and responsibilities related to "budgets – scopes – contracts – change orders (CO's)" and jobsite safety. The offer also includes a list of "project manager qualities," "computer knowledge/training," and a list of "project manager levels."

25. The written employment offer identifies the "objective" of Plaintiff's position: "To provide management & ownership with complete confidence in the development department within Drummond Advisors and BJB Properties[.]"

26. The written employment offer reflects the limited extent of Plaintiff's ability to exercise discretion and independent judgment in relation to her job duties. For example, on the construction jobsite, a Drummond/BJB project manager is authorized to "trouble-shoot and make informed jobsite decisions on smaller construction issues," but is not permitted to make decisions on "larger problems or concerns." Decisions related to "larger problems or concerns" are relegated to "management/ownership." In relation to budgets, the written offer provides that the project manager "need[s] to supply at least 3-prop[o]sals for each phase of the job and have contractors/suppliers send directly to timberwolfgc@gmail.com for management review first[;] in certain circumstances 3-proposals [sic] may not be necessary. This will be left to the discretion of management and/or ownership."

27. Plaintiff accepted the Defendants' written employment offer and began her employment on April 3, 2017.

5

28. Plaintiff received her first paycheck on April 28, 2017, a date less than two years prior to the filing of this complaint.

29. Plaintiff continued in her employment with Defendants until December 3, 2018 when she was terminated without cause.

30. Plaintiff's work performance from April 2017 to December 2018 was outstanding. Joe Marrese, her direct supervisor, assigned her to complete projects that other managers (all of them male) had failed at. She fixed their mistakes and succeeded where they had failed. Mr. Marrese conducted a formal performance review of Ms. Markle and rated her "outstanding" in all but one category, in which he rated her "excellent."

31. Throughout her employment, Plaintiff customarily and regularly worked in excess of 40 hours in a workweek. Her core schedule provided for 45 hours of work each week. She frequently exceeded that.

32. For most of her employment, Plaintiff documented her work hours on an Excel spreadsheet, which she submitted every two weeks.

33. Throughout her employment, Defendants paid Plaintiff a fixed salary with no overtime premium for hours worked in excess of 40 in a single workweek.

34. Between April and June 2018, Plaintiff twice raised the issue of overtime pay with her direct supervisor, Joe Marrese. When there was no progress, she took the matter to Sean Barry, her second-level supervisor. Mr. Barry said that he would go to Ms. Tanzer, BJB's human resources director, to obtain Plaintiff's time records and would also speak to Ms. Tanzer. He told Plaintiff that the

situation was "sticky." After a few weeks and no response, Plaintiff raised the issue with Mr. Barry again. Her efforts to rectify the situation were to no avail.

35. Mr. Barry, Mr. Marrese, and Ms. Tanzer were well aware that Plaintiff was regularly working in excess of 40 hours in a workweek but was not receiving overtime pay.

36. At no point did Mr. Barry, Mr. Marrese, Ms. Tanzer, or any other employee, owner, or agent of Drummond or BJB suggest to Plaintiff that she was exempt from overtime.

37. Plaintiff was at no time exempt from the overtime pay requirements of the FLSA or IMWL.

38. For example, Plaintiff's position did not qualify for the FLSA "executive" exemption because she did not supervise other employees.

39. Nor did Plaintiff's position qualify for the FLSA "administrative" exemption. Plaintiff's job duties did not meet either of the two independent "duties" requirements of an exempt administrative employee:

   a. Plaintiff's primary duty was not "the performance of office or nonmanual work directly related to the management or general business operations" of either Drummond or BJB.

   b. Plaintiff's primary duty "did not include the exercise of discretion and independent judgment with respect to matters of significance."

40. By way of example, as set forth in her written employment offer, Plaintiff's "principal duty" was to "organize the work of the crews, equipment, and

subcontractors to achieve maximum production in the most efficient manner so as to maintain the project schedule." That type of organizational work does not and did not involve the exercise of discretion and independent judgment with respect to matters of significance.

41. Plaintiff's duties included job site set up, inspection, conveying information, and preparing documents and did not include the ability to make independent choices, free from direction or supervision, on matters of significance.

42. Plaintiff's written employment offer explicitly limits her discretion to "smaller construction issues," relegating discretion on "larger projects or concerns," i.e. matters of significance, to management/ownership.

43. The written job description accurately reflects Ms. Markle's limited authority. The drawings and specifications for the construction projects were provided by others, to which she pursued details, clarifications, and documentation. She supplied proscribed information to the trades and their employees and inspected work for compliance with those instructions. She solicited bids from contractors but had no authority to engage or fire them. Instead, their written contracts and payment systems required the submission of information to a central location and multiple layers of approval.

44. In addition to the narrow limits on Plaintiff's ability to make independent decisions, her work was also not "directly related to the management or general business operations of" Drummond, her direct employer, or BJB, her joint employer. Plaintiff was engaged on the production side of the business: the

8

construction of buildings. Her work was not related to the administrative operations of either Drummond or BJB.

45. On information and belief, at all times relevant, BJB controlled Drummond or was under common control with Drummond.

46. At all times relevant, Plaintiff performed work which simultaneously benefited BJB and Drummond. All of the construction projects on which Plaintiff worked were BJB projects.

47. Plaintiff's written employment offer identifies the objective of her position as "provid[ing] management & ownership with complete confidence in the development department within Drummond Advise and BJB Properties[.]"

48. At all times relevant, BJB and Drummond were not completely disassociated with respect to Plaintiff's employment. BJB and Drummond are two corporate entities in a group of related entities with overlapping ownership, control, and business activities. For example, Plaintiff's direct supervisor, Mr. Marrese, was directly employed by Timberwolf General Contracting. Plaintiff and other project managers were directly employed by Drummond. Plaintiff's second-level supervisor, Mr. Barry, is a BJB partner. Individuals directly employed by Drummond, Timberwolf, and BJB were assigned to work on the same BJB construction projects.

49. Throughout her employment, Plaintiff regularly interacted with and took direction from both her direct supervisor, Mr. Marrese, and her second-level supervisor, Mr. Barry. Mr. Marrese conducted her performance reviews and sent them to Mr. Barry, who decided the amount of her bonus.

9

50. Throughout her employment, BJB and Drummond maintained joint control over Plaintiff's hours, wages, job duties, and work activities.

51. At all times relevant, BJB had the power, whether alone or jointly, directly or indirectly, to hire, fire, or modify Plaintiff's employment conditions including her wages and work schedule. On information and belief, Mr. Barry, a BJB partner, had ultimate hiring and firing authority. Plaintiff negotiated the terms of her employment with Ms. Tanzer, a BJB employee whose responsibilities included both BJB and Drummond employees. Plaintiff submitted evidence of her work hours to Ms. Tanzer. She discussed her work hours and her compensation, including the failure to pay overtime wages, with both Mr. Marrese, a Timberwolf employee, and Mr. Barry, a BJB owner.

52. At all times relevant, BJB carried out payroll and human resources responsibilities related to Plaintiff's employment and maintained records of her employment, including records of her wages and work hours.

53. In December 2018, despite Ms. Tanzer's representation to Plaintiff that BJB had "never fired anyone without cause" and that a termination without cause "w[ould] never happen," Defendants terminated her employment without cause, citing a slow period of work. In contrast, Defendants have never terminated a male project manager without cause, even in slow periods of work.

54. Plaintiff has not been compensated for her unpaid overtime wages.

## COUNT I
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207
### UNPAID OVERTIME WAGES

55. Plaintiff restates and incorporates by reference the preceding paragraphs as alleged above.

56. Through their actions described above, Defendants failed to pay Plaintiff her mandated overtime wages in violation of 29 U.S.C. § 207.

57. Defendants' violations of 29 U.S.C. § 207 were willful.

58. Defendants were joint employers of Plaintiff and are jointly and severally liable for the violations of 29 U.S.C. § 207.

WHEREFORE Plaintiff prays for relief as follows:

    A. The entry of judgment in her favor and against Defendants on Count I, jointly and severally;

    B. An order awarding Plaintiff an amount equal to her unpaid overtime wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

    C. An order awarding Plaintiff her costs, reasonable attorney's fees, and litigation expenses pursuant to 29 U.S.C. § 216(b); and

    D. Such other and further relief as the Court deems just and proper.

## COUNT II
### ILLINOIS MINIMUM WAGE LAW, 820 ILCS 105/4a
### UNPAID OVERTIME WAGES

59. Plaintiff restates and incorporates by reference the preceding paragraphs as alleged above.

60. Through their actions described above, Defendants failed to pay Plaintiff her mandated overtime wages in violation of 820 ILCS 105/4a.

61. Defendants were joint employers of Plaintiff and are jointly and severally liable for the violations of 820 ILCS 105/4a.

WHEREFORE, Plaintiff prays for relief as follows:

A. The entry of judgment in her favor and against Defendants on Count II, jointly and severally;

B. An order awarding Plaintiff her unpaid overtime wages plus a penalty in the amount of 2% of the underpayment per month for the length of the violation pursuant to 820 ILCS 105/12;

C. An order awarding Plaintiff her costs and reasonable attorney's fees pursuant to 820 ILCS 105/12;

D. An order awarding Plaintiff pre-judgment and post-judgment interest as provided by law; and

E. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all jury issues.

Dated: April 25, 2019            Respectfully submitted,

/s Marni Willenson
Marni Willenson
marni@willensonlaw.com
WILLENSON LAW, LLC
542 S. Dearborn St., Suite 610
Chicago, IL 60605
(312) 546-4910

Attorney for Plaintiff